UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ALAN T. WORD,

    Plaintiff,

vs.

JO ANNE B. BARNHART
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Hon. Dennis M. Cavanaugh

**OPINION**

Civil Action No.: 05-2893

DENNIS M. CAVANAUGH, U.S.D.J.

    This matter comes before the Court upon the application of Plaintiff Alan T. Word ("Plaintiff") to overturn the final determination of Jo Anne B. Barnhart, the Commissioner of Social Security (the "Commissioner"), denying Plaintiff's request for Disability Insurance Benefits ("DIB") and Supplementary Security Income ("SSI") under the Social Security Act (the "Act"). The Court has jurisdiction to review this matter pursuant to 42 U.S.C. §§ 405(g) and 1383 (c)(3). For the reasons set forth below, the final decision of the Commissioner is **affirmed**.

## I. BACKGROUND

    Plaintiff, born on March 8, 2006, has an eleventh grade education. His work history includes experience as a maintenance engineer, superintendent, desk clerk, and construction worker. In his applications for DIB and SSI, he contends that physical impairments, including pains in his back and buttocks and occasional headaches, have rendered him unable to work since June 30, 2002.

## A. Procedural History

Plaintiff applied for DIB and SSI benefits on April 9, 2003, and April 16, 2003, respectively. (Tr. at 64-67, 220). He asserts that his disability resulted from injuries received in a motor vehicle accident. (Tr. at 65). His claim were denied initially and on reconsideration. (Tr. at 43-49, 50-52, 148-153, 221-224, 226-228). Plaintiff requested a hearing before an Administrative Law Judge. ("ALJ"). (Tr. at 53). Following a hearing held on August 17, 2004, the ALJ, in a decision dated October 18, 2004, found Plaintiff was not disabled within the meaning of the Act. (Tr. at 13-19). On April 6, 2005, the Appeals Council denied Plaintiff's request for review, at which time the ALJ's decision became the final decision of the Commissioner. (Tr. at 5-7, 8). Plaintiff now appeals to this Court.

## B. Factual History

### 1. Medical Records Relating to Plaintiff's Physical Injury

Plaintiff was involved in an automobile accident on June 29, 2002. (Tr. at 123,124, 128). He was taken to the emergency room at Columbia Hospital in the early morning. (Tr. at 123). X-rays taken of Plaintiff's cervical spine were normal. (Tr. at 130). Later that day, Plaintiff was discharged after being provided Motrin and a cervical collar. (Tr. at 123).

Prior to and following the vehicle accident, Plaintiff lived with his two sons, a woman and her two grandchildren. (Tr. at 98). He stated that he would rise from bed in the morning and help prepare his children for school and accompany a friend's grandchildren to preschool. (Id.) Additionally, Plaintiff often would prepare meals and clean the house. (Tr. at 99). Plaintiff takes Roxicet, Endocet, Cyclobenzaprine, and ibuprofen to alleviate his discomfort. (Tr. at 145, 84, 34, 104, 216). However, Plaintiff complained of side effects from these drugs such as blurry

2

vision, drowsiness, nausea, dry mouth, and constipation. (Tr. at 34-35, 84). He also has been a moderate smoker, averaging one to three packs per week since 1992. (Tr. at 145, 198).

On July 2, 2002, Plaintiff saw Dr. Enrique Hernandez as a result of the accident and presented with head abrasions, headaches, paraspinal spasms, and reduced cervical and spinal mobility. (Tr. at 134, 188-189). Dr. Hernandez noted that Plaintiff was alert and fully oriented; a neurological exam revealed normal memory and language functions. (Tr. at 134). Plaintiff's muscle strength and reflexes were found to be normal without any evidence of atrophy. (Tr. at 134-135). Balance, coordination, gait, and sensory examination were all observed to be normal. (Tr. at 135).

Dr. Hernandez noted that a lumbar spine MRI subsequently performed on August 5, 2002 revealed a central herniated disc at the L5-S1 level. (Tr. at 135). As a result, electrophysiological testing was conducted which provided negative results. (Id.) On August 7, 2002, Dr. Hernandez completed a disability certificate indicating that Plaintiff was "totally disabled" due to his herniated disc and severe pain. (Tr. at 177).

On August 13, 2002, Dr. Hernandez advised that, due to his herniated disc and resultant pain, Plaintiff could not work. (Tr. at 132). Dr. Hernandez noted that Plaintiff was limited when he engaged in walking, standing, stooping, bending, lifting and using his hands; he estimated that Plaintiff's lumbar spine range of motion was impaired by fifty percent. (Tr. at 132-133). Dr. Hernandez recommended physical therapy supplemented by medication and observed that there was "good" compliance and response to such treatment. (Tr. at 133).

On November 20, 2002, Dr. Hernandez noted that Plaintiff reported his cervical pain decreased as a result of this treatment; however, his lumbar pain persisted. (Tr. at 135). As a

result, Plaintiff began taking prescription analgesics, including narcotic analgesics. (Id.) Dr. Hernandez also encouraged him to receive epidural injections in order to treat the diagnosis of a contusion injury to the lumbar spine with posterior disc herniation at L5-S1, with chronic irritation of lumbar paraspinals accompanied by pain, spasm, and impaired mobility, contusion sprain to the cervical spine, and posttraumatic headaches. Plaintiff refused the injections because he was concerned about its effects. (Tr. at 135-136). Plaintiff was referred to Dr. Koziol for surgical evaluation. (Tr. at 135).

On a medical capacity evaluation form, dated March 3, 2003, Dr. Hernandez indicated that, in a typical workday, Plaintiff was capable of sitting, standing and walking for one hour, per activity, frequently lifting ten pounds and, occasionally, up to twenty pounds, grasping and manipulation through the use of his hands, and occasionally bending and reaching above shoulder level. (Tr. at 137). However, he was unable to use his hands to push or pull, and could not squat, crawl or climb. (Id.) Plaintiff was moderately restricted from driving, exposure to temperature changes and environmental irritants and totally restricted from exposure to unprotected heights and moving machinery. (Id.)

Dr. Hernandez completed a Physical Residual Functional Capacity Questionnaire in which he diagnosed plaintiff with lumbar disc herniation. (Tr. at 138). He characterized the prognosis as permanent. (Id.) Plaintiff's subjective complaints were reported to be constant; his subjective lumbar spine pain was recorded as 7-8/10 with cervical pain as 6/10. (Id.) Plaintiff was reported to be unable to walk an entire block and able to sit or stand for approximately thirty minutes. In Dr. Hernandez's estimation, Plaintiff would have to take an unscheduled break from work each hour for five to ten minutes in order to alleviate his discomfort. (Tr. at 139-140).

4

According to the report, Plaintiff was likely to miss four work days per month due to his impairment or treatment. (Tr. at 141). Plaintiff's impairments were reported to interfere constantly with his attention and concentration. Dr. Hernandez did not believe that Plaintiff was capable of performing at even a "low stress" job due to the persistent pain and the narcotic medication required to treat it. (Tr. at 139).

On May 20, 2003, Plaintiff visited Dr. Sreedevi Menon for a consultative examination. (Tr. at 145-147). Plaintiff detailed his car accident and resulting injuries. (Tr. at 145). He told Dr. Menon that he declined epidural injections and that no surgery was planned. (Tr. at 145). Plaintiff explained that he cooked approximately three times per week and was able to tend to his own personal hygiene. (Tr. at 146). Plaintiff's sole medication at that time was identified as Roxicet. (Tr. at 145).

During the examination, Plaintiff exhibited a normal gait, normal station and was able to perform a toe-and-heel walk without any problems or assistive devices. (Tr. at 145-146). Plaintiff was able to change his clothes and position himself on the examination table without any difficulty. (Tr. at 146). He exhibited both lumbar flexion/extension and straight leg raising of sixty degrees, as well as lateral flexion and rotation of twenty degrees. (Id.) Plaintiff complained of lumbar tenderness; however, no trigger points were identified. (Id.) Plaintiff's grip strength was 5/5 bilaterally, had full range of motion in his shoulders, elbows, forearms, wrists, hips, knees, ankles, and did not exhibit any sensory deficits or evidence of atrophy. (Id.) Dr. Menon concluded that Plaintiff was able to sit, stand, walk, hear, and speak, and was moderately restricted in lifting, carrying and handling objects. (Tr. at 147).

On May 29, 2003, after considering the evidence, a State Agency analyst concluded that

Plaintiff was not disabled within the meaning of the Act. (Tr. at 148-154). This finding was affirmed on August 1, 2003, when Dr. Eden B. Attenza, a physician with the agency, concurred that Plaintiff was capable of occasionally lifting or carrying twenty pounds, frequently lifting or carrying ten pounds and was able to stand, walk or sit six hours per day; she found that he occasionally could climb, stoop, crouch, and crawl, and was capable of balancing and kneeling. (Tr. at 149, 150, 153, 192-193). Plaintiff was not found to be manipulatively, communicatively, or environmentally limited. (Tr. at 151).

Pursuant to a referral by Dr. Hernandez, Plaintiff was seen on July 15, 2004 by Dr. Mitchell F. Reiter. (Tr. at 216). Plaintiff complained of pain in his lower back which radiated into his left buttock, but not into his lower extremities. (Id). During examination, Plaintiff's cervical and thoracic spine were found to be unremarkable; yet, the lumbar region was tender. (Tr. at 217). Plaintiff did not exhibit any neurological deficits and he was found to be alert and oriented. (Id.) Motor strength was identified as 5/5 throughout Plaintiff's body and his reflexes were normal. (Id.) Dr. Reiter described the present symptoms as indicative of discogenic pain (Tr. at 218) and discussed the options of alleviating pain through medication or lumbar fusion surgery (Tr. at 219).

Plaintiff then underwent an Independent Medical Exam, conducted by Dr. Patrick Foye, on August 21, 2004. (Tr. at 195-205). Dr. Foye observed that Plaintiff was limping, had a slow gait and had difficulty performing a toe-and-heel walk. (Tr. at 199). Although Plaintiff did not need assistance getting up onto the examination table, he required extra time. (Id.) Strength in his upper and lower limbs were all evaluated as 5/5. (Tr. at 199-200). A straight leg raise produced back pain on Plaintiff's left side. (Tr. at 200). Sensory examination was considered to

be normal. (Id.) Although Dr. Foye concluded that Plaintiff's lumbar pain was severe, limited his lumbar range of motion and ability to lift, carry, push, pull, stand, walk and sit, and could only be properly alleviated by lumbar fusion surgery (Tr. at 200-203), he was not limited from reaching in all directions, gross manipulation, fine manipulation or feeling. (Tr. at 204).

### 2. Plaintiff's Testimony

At the hearing held on August 17, 2004, Plaintiff testified about his physical condition. (Tr. at 20-42). Although Plaintiff was actively employed at time he was injured, he stated that he often had been unemployed due to non-medically related reasons, such as the inability to maintain a job. (Tr. at 40). Plaintiff reported that he suffered a lumbar spine injury in an automobile accident on June 29, 2002 which prevented him from working as a maintenance repairman. (Tr. at 26).[1] According to Plaintiff, the injury caused severe pain in his lower back and left buttock which prevents him from lifting anything. (Tr. at 27). He claimed that the only way to alleviate his pain was to take medication. (Tr. at 28). Plaintiff testified that his medications caused unpleasant side effects such as blurred vision, nausea and vomiting, constipation, numbness, dizziness, drowsiness, and lack of concentration. (Tr. at 34-36). Plaintiff reported that his injury impairs his everyday activities such as walking to the store, getting out of bed, dressing, cooking, cleaning, and ascending stairs. (Tr. at 28-33). He stated that his physician, Dr. Hernandez, has treated him for approximately two years. (Tr. at 33-34). Plaintiff mentioned that he had not received epidural injections, although Dr. Hernandez recommended such treatment. (Tr. at 39). He also noted that Dr. Reiter, a physician at the

---

[1] At the time of the hearing, civil litigation as a result of the automobile accident was pending. (Tr. at 40).

7

University of Medicine and Dentistry of New Jersey, recommended spinal surgery[2]; however, Plaintiff was reluctant to undergo such a procedure because of possible complications. (Tr. at 34).

### 4. The Decision of the ALJ

The ALJ determined Plaintiff was not disabled within the meaning of the Act and, therefore, denied his application for disability benefits. (Tr. at 13-19). Although he found that Plaintiff suffered the "severe" impairment of central disc herniation and cervical sprain, the ALJ could not identify any medical findings which met or were equal in severity to the clinical criteria of any impairment listed in Appendix 1, Subpart P to Regulations No. 4, and dismissed Plaintiff's subjective complaints of disabling pain as being less than fully credible. (Tr. at 15). He noted the inconsistencies of disabling pain coupled with the conservative nature of treatment and Plaintiff's refusal to undergo epidural injections or consider surgery as a viable option. (Tr. at 16). Moreover, the ALJ acknowledged that, during Dr. Menon's examination, Plaintiff did not have any difficulty ambulating; in fact, he was found to be capable of walking on his heels and was able to get on and off the examination table without any difficulty. (Id.) Plaintiff's daily activities and the fact that he was capable of providing sole custodial care for two teenage children was found to be inconsistent with the claimed disabling pain. (Id.) Based on the entire record, the ALJ rejected Plaintiff's assertions of total disability. (Id.) In reaching this conclusion, the ALJ did not accord significant weight to Dr. Hernandez's opinion that Plaintiff was completely disabled since it did not necessarily reflect the criteria to be applied by the

---

[2]Plaintiff also testified that, prior to this recommendation, another surgeon, Dr. Koziol, did not suggest surgery. (Tr. at 39).

Commissioner and was not supported by other medical opinions. (Tr. at 16-17). The ALJ noted that, due to his impairments, Plaintiff might not be able to perform much of his past relevant work as a maintenance engineer, superintendent, desk clerk at a gym, or construction worker since he does suffer some physical limitations. (Tr. at 17). However, after consideration of Plaintiff's age, education, and work experience, the ALJ concluded that he retained the residual functional capacity to perform the exertional demands of a full range of more sedentary work. (Id.)

## II. DISCUSSION

### A. Standard of Review

A claimant is entitled to benefits under the Act only if he satisfies all relevant requirements of the statute. To establish a valid claim for disability insurance benefits and SSI benefits, the claimant must meet the insured status requirements of 42 U.S.C. § 423(c) and the income and resource limitations of 42 U.S.C. §§ 1382(a) and 1382(b), respectively. Furthermore, for the purposes of both benefits, the claimant must demonstrate that he was disabled within the meaning of the Act.

### B. Analysis for Determining Disability

Under the Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see, 42 U.S.C. § 1382c(a)(3)(A). Physical or mental impairments are those that "result from anatomical, physiological or psychological abnormalities, which are demonstrable by medically acceptable clinical and

9

laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3); 42 U.S.C. § 1382c(a)(3)(D). Furthermore, an individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations provide a five-step, sequential evaluation procedure to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. First, the Commissioner must inquire whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is found to be currently engaged in substantial gainful activity, he will not be found to be disabled without first considering his medical condition. 20 C.F.R. § 404.1520(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner must then decide whether the claimant suffers a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the impairment is not severe, the claimant will not be found disabled. 20 C.F.R. § 404.1520(c). Third, if the claimant is found to be suffering from a severe impairment, the Commissioner must decide whether the impairment equals, or exceeds, in severity one of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is listed, or is the equivalent to a listed impairment, the Commissioner must find the claimant disabled without consideration of other facts. 20 C.F.R. § 404.1520(d). Fourth, if the impairment is not listed, the Commissioner must consider whether the claimant has sufficient residual functional capacity to perform basic work activities. 20 C.F.R. § 404.1521(a). Residual functional capacity is defined as what the claimant "can still do despite [his] limitations." 20

C.F.R. § 404.1545(a)(1). If a claimant has the residual functional capacity to meet the physical and mental demands of his past work, the Commissioner must find him not disabled. 20 C.F.R. § 404.1520(f). Finally, if the claimant cannot perform any past relevant work, the Commissioner must determine, on the basis of claimant's age, education, work experience, and residual functional capacity, whether he can perform any other work. 20 C.F.R. § 404.1520(a)(4)(v). If he cannot, the Commissioner will find him disabled. 20 C.F.R. § 404.1520(g). The claimant bears the initial burden of establishing that his impairment prevents him from returning to past relevant work. Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000). If the claimant satisfies the first four steps noted above, the burden shifts to the Commissioner to demonstrate that work exists to a significant degree in the national economy which the claimant could perform. Id.

### C. Scope of Review

A reviewing court must uphold the Commissioner's factual findings if they are supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000). Substantial evidence means "more than a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (quoting Consol. Edison, 305 U.S. at 229). However, substantial evidence "does not mean a large or considerable amount of evidence." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence may be "less than a preponderance." Stunkard v. Sec'y of Health & Human Servs., 841 F.2d 57, 59 (3d Cir. 1988). However,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.

Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)).

"The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner." Claussen v. Chater, 950 F.Supp. 1287, 1292 (D.N.J. 1996) (citing Stewart v. Sec'y of Health, Educ. & Welfare, 714 F.2d 287, 290 (3d Cir. 1983)). The standard affords "deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence." Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999). "The inquiry is not whether the reviewing court would have made the same determination but, rather, whether the Commissioner's conclusion was reasonable." Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988)). Therefore, a court may not "set the Commissioner's decision aside if it is supported by substantial evidence, even if [the reviewing court] would have decided the factual inquiry differently." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

The reviewing court has a duty to review the evidence in its totality. Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). In order to do so, "a court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf, 972 F. Supp. at 284 (quoting Willibanks v. Sec'y of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988)) (internal citation

omitted). The Commissioner has a corresponding duty to facilitate the court's review: "[w]here the [Commissioner] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581, 584-86 (3d Cir. 1986)). As the Third Circuit has held, the ability to comprehend fully the Commissioner's reasoning is essential to a meaningful court review:

> [U]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's "duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of Health, Educ. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977) (internal citation omitted)). A reviewing court often will defer to an ALJ's credibility determination. Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003).

### D. Analysis

Plaintiff contends that the ALJ erred as a matter of law by (1) failing to support his residual functional capacity assessment with specific medical facts; (2) failing to consider all the evidence in its totality; (3) failing to weigh the opinions of two treating physicians; and (4) failing to accord significant weight to the opinion of Plaintiff's treating physician. (Pl.'s Br. at 1-3). For the reasons set forth below, the Court disagrees and will affirm the ALJ's decision.

With respect to Plaintiff's first contention, that the ALJ failed to support his residual functional capacity assessment with substantial evidence, Plaintiff asserts that the ALJ failed to cite any specific medical facts to support his conclusion. (See Tr. at 218-219; Pl.'s Br. at 1-2).

13

Plaintiff further argues that Dr. Reiter's opinion to the effect that Plaintiff would have been unlikely to return to work even after surgery contradicts the ALJ's final assessment. (Pl.'s Br. at 2). This Court finds, however, that the ALJ stated numerous reasons for his assessment. He listed and evaluated the criteria and devoted significant attention to Plaintiff's claims. The ALJ considered Plaintiff's categorization as a younger individual and high school education in determining that he was capable of performing sedentary work[3]. (Tr. at 17). The ALJ also cited the medical reports of Dr. Menon, who opined that Plaintiff was capable of sitting, standing, walking, speaking, and hearing, to support his assessment that Plaintiff could perform sedentary work. (Tr. at 16). He noted that Dr. Attenza had affirmed the prior State Agency assessment that Plaintiff retained the ability to occasionally lift or carry up to twenty pounds, frequently lift or carry ten pounds, and stand, walk, or sit for six hours. (Tr. at 149). Dr. Attenza's evaluation that Plaintiff had no visual, manipulative, communicative or environmental limitations is in accord with the ALJ's assessment. (See Tr. at 150-151). Although Dr. Reiter briefly mentioned in conversation the unfortunate prospect of not going back to work after surgery (Tr. at 219), the surgery option was never pursued and Plaintiff's residual functional capacity post-surgery is merely speculative.[4]

Notwithstanding Plaintiff's objections, the ALJ adequately considered all the evidence before him in his decision. (Tr. at 15-18). Plaintiff contends that his subjective complaints

---

[3]Such sedentary work could include activities similar to those involved in Plaintiff's prior occupation as a desk clerk at a fitness center, where he checked in members and handled cancellations. (Tr. at 93).

[4]In fact, Plaintiff indicated that he did not wish to receive rehabilitative services that could help him return to work. (Tr. at 85).

involving pain, lack of concentration, and drowsiness were not properly addressed. (Pl.'s Br. at 2). However, Plaintiff's testimony alleging poor memory and lack of concentration (Tr. at 35-36) was inconsistent with a neurological exam that found his memory normal. (Tr. at 134). In his analysis, the ALJ noted the conservative nature of Plaintiff's treatment and the facts that he refused surgery, epidural injections and was never prescribed a TENS unit. (Tr. at 15-16). It is important to note that the ALJ did not simply dismiss these complaints; rather, he concluded that the evidence did not substantiate that Plaintiff's subjective complaints precluded all work activity. (Tr. at 16). The ALJ cited the medical examination conducted by Dr. Menon which contradicted the extent of Plaintiff's subjective complaints. (Id.) Moreover, Plaintiff's daily activities, such as caring for his two sons, supported the ALJ's determination that the subjective complaints were not entirely credible. (Tr. at 15-16).

Plaintiff further argues that the Commissioner's final decision is flawed because it failed to consider every medical opinion it received. (Pl.'s Br. 2-3). In particular, Plaintiff contends that the ALJ did not consider the opinions of Drs. Reiter and Foye. (Id.) The ALJ did, however, mention both physicians in the "Evaluation of the Evidence" portion of his decision. (Tr. at 14-15). Therefore, it is reasonable to conclude that, when he stated that he considered all of the "record evidence," all of the "above-summarized" medical evidence, and based his decision on the "entire record," the ALJ included in his review the opinions of Drs. Reiter and Foye. (See Tr. at 15-16). In Fargnoli v. Halter, the Third Circuit held that, although an ALJ is not expected to refer to every relevant piece of evidence in the record, he must consider and evaluate the evidence consistent with his responsibilities as factfinder. 247 F.3d 34, 44 (3d Cir. 2001). Here, there is sufficient indication that ALJ O'Leary considered the medical records of Drs. Reiter and

Foye in reaching his conclusion.

Finally, Plaintiff asserts that the ALJ failed to accord proper weight to the opinions and assessment of the treating physician, Dr. Hernandez. (Pl.'s Br. at 2-3). The ALJ did not disregard outright Dr. Hernandez's declaration that Plaintiff was disabled and incapable of work; rather, he observed that such an assessment is not entitled to special weight, since that determination is reserved to the Commissioner. (Tr. at 16-17). Notwithstanding its relative weight, the ALJ found that Dr. Hernandez's assessment of "total disability" was unsupported by the record as a whole. (See Tr. at 17, 177). Although Dr. Hernandez found indications of impairment and disability, his examination also revealed the presence of full muscle strength without atrophy, equal and present reflexes, normal gait, balance and coordination, and found Plaintiff to be fully oriented and alert. (Tr. at 134-135). Moreover, Dr. Hernandez's total disability assessment was not supported by the negative electrophysiological and electrodiagnostic tests and the fact that Plaintiff only took Roxicet, after rejecting epidural injections or surgery as viable options, to treat his condition. (Tr. at 135, 145, 168-169, 174-176). Plaintiff's daily activities, such as parenting two teenage boys, preparing meals, washing dishes, taking his friend's grandchildren to school, and attending to his personal needs, were found to be inconsistent with Dr. Hernandez's assessment of total disability. (Tr. at 98-99, 146). Dr. Menon's consultative examination was, on the whole, found to be unremarkable in that it demonstrated that he was able to change, get on and off the examination table without difficulty, and was able to perform a toe-and-heel walk. (Tr. at 146-147). Furthermore, Plaintiff's strength was undiminished and no atrophy nor trigger points were found despite complaints of lumbar tenderness. (Id.) Dr. Menon concluded that Plaintiff was only "moderately" impaired when engaging in lifting, carrying and handling

objects; otherwise, he was fully capable to sit, stand, walk, hear, and speak. (Tr. at 147).

## E. Conclusion

For the aforementioned reasons, the finding that Plaintiff was not disabled, as the term is defined by the Act, was supported by substantial evidence in the record. The decision of the Commissioner is **affirmed**. An appropriate Order accompanies this Opinion.

*[signature]*

Dennis M. Cavanaugh, U.S.D.J.

Date:      June 23, 2006
Original:  Clerk's Office
Cc:        All Counsel of Record
           File